# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 25, 2014          Decided May 13, 2014

No. 13-1212

WILDEARTH GUARDIANS,
PETITIONER

v.

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, ET AL.,
RESPONDENTS

NATIONAL MINING ASSOCIATION, ET AL.,
INTERVENORS

———

On Petition for Review of a Final Action of the
United States Environmental Protection Agency

———

*Samantha Ruscavage-Barz* argued the cause and filed the briefs for petitioner. *James J. Tutchton* entered an appearance.

*Kim Smaczniak*, Attorney, Environmental Defense Section, U.S. Department of Justice, argued the cause for respondents. With her on the brief were *Robert G. Dreher*, Acting Assistant Attorney General, Environment and Natural Resources Division, and *Scott Jordan*, Office of General Counsel.

*Andrew C. Emrich*, *Emily C. Schilling*, *Peter S. Glaser*, and *Merril J. Hirsh* were on the brief for intervenors National Mining Association, et al. in support of respondents.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On June 16, 2010, Earthjustice, on behalf of WildEarth Guardians ("Guardians") and other environmental groups, petitioned the Environmental Protection Agency ("EPA") to add coal mines to the regulated list of stationary source categories under the Clean Air Act, 42 U.S.C. § 7411(b)(1)(A). The petition sought to have EPA initiate a rulemaking to: "(1) list coal mines as a category of stationary sources that emit air pollution which may reasonably be anticipated to endanger public health or welfare; (2) establish federal standards of performance for new and modified sources within the newly listed stationary source category for coal mines; and (3) establish federal standards of performance to address methane emissions from existing sources within the newly listed stationary source category for coal mines." Pet'rs' Br. at 7. EPA denied the petition on April 30, 2013. *Letter from Bob Perciasepe, Acting Administrator, to Edward B. Zukoski, Staff Attorney, Earthjustice* (Apr. 30, 2013) ("*Letter Denying Petition*"), *reprinted in* Joint Appendix ("J.A.") 40-44. Guardians now seeks review of EPA's action.

In denying the petition for rulemaking, EPA explained that it "must prioritize its actions in light of limited resources and ongoing budget uncertainties, and at this time, cannot commit to conducting the process to determine whether coal

mines should be added to the list of categories under" the Clean Air Act. *Notice of Final Action on Petition From Earthjustice To List Coal Mines as a Source Category and To Regulate Air Emissions From Coal Mines*, 78 Fed. Reg. 26,739 (May 8, 2013). EPA made it clear, however, that the denial was not a determination as to whether coal mines should be regulated as sources of air pollutants. *Letter Denying Petition*, J.A. 40. The agency also indicated that it might, in the future, initiate a rulemaking proceeding to address the question raised by Guardians, but it would not do so now. *Id*.

Guardians contends that EPA's reasons for denying the petition for rulemaking do not "conform to the authorizing statute," as required under *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007). We disagree. On the record before us, we find that EPA's action easily passes muster under the "extremely limited" and "highly deferential" standard that governs our review of an agency's denial of a rulemaking petition. *Id*. at 527-28 (quoting *Nat'l Customs Brokers & Forwarders Ass'n of America, Inc. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). "[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities," *Massachusetts v. EPA*, 549 U.S. at 527 (citation omitted), which means that EPA has discretion to determine the timing and priorities of its regulatory agenda, *id*. at 533. EPA provided a "reasonable explanation as to why it cannot or will not exercise its discretion" to regulate coal mines at this time. *Id*. at 533. And the reasons given are consistent with the agency's delegated authority and supported by the record. We therefore deny the petition for review.

## I.    BACKGROUND

Section 7411 of the Clean Air Act addresses air pollution prevention and control, and sets forth air quality and emissions limitations. Section 7411(b), which is at issue in this case, provides in relevant part that:

(1)(A) The Administrator shall . . . publish (and from time to time thereafter shall revise) a list of categories of stationary sources. He shall include a category of sources in such list if in his judgment it causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare.

(B) Within one year after the inclusion of a category of stationary sources in a list under subparagraph (A), the Administrator shall publish proposed regulations, establishing Federal standards of performance for new sources within such category. The Administrator shall afford interested persons an opportunity for written comment on such proposed regulations. After considering such comments, he shall promulgate, within one year after such publication, such standards with such modifications as he deems appropriate. The Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedure required by this subsection for promulgation of such standards. Notwithstanding the requirements of the previous sentence, the Administrator need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard. Standards of performance or revisions thereof shall become effective upon promulgation.

42 U.S.C. § 7411(b)(1)(A), (B).

As noted above, on June 16, 2010, Earthjustice, on behalf of Guardians and other environmental groups, petitioned EPA to add coal mines to the regulated list of stationary source categories under § 7411(b)(1)(A). *Petition for Rulemaking Under the Clean Air Act*, *reprinted in* J.A. 1-27. The petition asserted that coal mines should be regulated under the Clean Air Act because they account for 10.5% of the total methane emissions in the United States. *Id.* at J.A. 5-7. The petition also pointed out that coal mines emit particulate matter, nitrogen oxides, and volatile organic compounds, all pollutants that EPA regulates through National Ambient Air Quality Standards ("NAAQS"). *Id.* at J.A. 10-14. It also asserted that orange nitrogen dioxide clouds have been observed in the areas surrounding mining operations, *id.* at J.A. 15-18, and that the Bureau of Land Management ("BLM") has recognized the danger of nitrogen dioxide emissions from the blasting involved in coal mining, *id.* at J.A. 14.

On December 27, 2010, WildEarth Guardians sent a letter to EPA providing supplemental information in support of the petition for rulemaking. *Letter from Jeremy Nichols, Climate and Energy Program Director, WildEarth Guardians, to Lisa Jackson, EPA Administrator* (Dec. 27, 2010), *reprinted in* J.A. 28-39. This submission offered data showing that coal mines contribute to nitrogen oxide, particulate matter, and ozone levels exceeding NAAQs in the Powder River Basin of southeastern Montana and northeastern Wyoming. *Id.* at 30-37.

In rejecting the petition for rulemaking, EPA made it clear that the denial was "not based on a determination as to whether the emissions from coal mines cause or significantly

contribute to air pollution that may reasonably be anticipated to endanger public health and welfare." *Letter Denying Petition*, J.A. 40. Rather, EPA stated that "resource limitations and the necessity of completing court-ordered rulemaking actions have continued to hinder" the agency's effort to determine whether to add coal mines to the regulated list of stationary source categories under § 7411(b)(1)(A). *Id.* at J.A. 42. Specifically, the agency explained that the budget for EPA's Office of Air Quality Planning and Standards was reduced by 12% in real dollars between 2006 and 2013, and its staff levels had also declined. *Id.* In addition, "automatic reductions in federal agency resources . . . h[ad] further reduced the EPA's 2013 budget and h[ad] necessitated significant reductions in a number of regulatory efforts already underway." *Id.* According to EPA, the Office of Air Quality Planning and Standards has 45 nationally applicable stationary source rules due for review or promulgation by September 2014, and it is facing challenges to 15 other recently issued rules. *Id.*

In light of these resource constraints, EPA stated that it was "taking a common-sense, step-by-step approach intended to obtain the most significant greenhouse-gas-emissions reductions through using the most cost-effective measures first." *Id.* at J.A. 43. This means that, in allocating resources available for addressing air pollution, EPA is focusing first on promulgating standards for transportation and electricity systems because these are the largest sources, responsible for more than 60% of the greenhouse gas emissions in the United States in 2011. *Id.* at 43 & n.9. "In contrast to the electricity-generating sector, the coal-mines category represents about 1 percent of total 2011 U.S. greenhouse gas-emissions." *Id.* at 43. The EPA's *Letter Denying Petition* concluded that, "[a]t this point, the agency believes it must address other, higher-priority actions before it can commit to consider whether to

list coal mines as a stationary-source category. . . ." *Id*. at J.A. 44. EPA indicated that, "[i]n the future," the agency "may initiate the process for such a determination, but the agency has decided that it will not do so now." *Id.* at J.A. 40.

## II.     ANALYSIS

### A. *Standard of Review*

In *Massachusetts v. EPA*, the Court confirmed that review of an agency's denial of a petition for rulemaking is very narrow: "Refusals to promulgate rules are . . . susceptible to judicial review, though such review is extremely limited and highly deferential." 549 U.S. at 527-28 (quotations omitted). The Court's decision is also clear in setting the parameters for review with respect to petitions for rulemaking under the Clean Air Act:

> [O]nce EPA has responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute. Under the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change *or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do*. To the extent that this constrains agency discretion to pursue other priorities of the Administrator or the President, this is the congressional design.

*Id*. at 533 (emphasis added) (citations omitted).

In assessing Guardians' petition for review in line with established precedent, we must determine whether EPA exercised discretion pursuant to its delegated authority under

the Clean Air Act. We must also determine whether the agency "adequately explained the facts and policy concerns it relied on and [whether] . . . those facts have some basis in the record." *WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 817 (D.C. Cir. 1981). And, as we have made clear in the past, "[w]e will overturn an agency's decision not to initiate a rulemaking only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency." *Nat'l Customs Brokers & Forwarders Ass'n,* 883 F.2d at 96-97 (citations omitted).

### B. EPA's Reasons for Denying the Petition for Rulemaking are Reasonable, Supported by the Record, and Consistent with the Authorizing Statute.

The Court's decision in *Massachusetts v. EPA* overturned EPA's denial of a petition to regulate new vehicle emissions under the Clean Air Act. 549 U.S. at 534. EPA concluded that it lacked authority to regulate these emissions because, in its view, carbon dioxide is not an "air pollutant" under the Clean Air Act. *Id.* at 528. The Court held that EPA misinterpreted its authorizing statute in reaching this conclusion. *Id.* at 528-29. EPA also reasoned that, even assuming that it had the necessary statutory authority, it would not regulate carbon dioxide because other Executive Branch programs were providing "an effective response to the threat of global warming," regulating new vehicle greenhouse gas emissions might impair the President's ability to negotiate with developing nations, and this would be an "inefficient, piecemeal approach" to addressing climate change. *Id.* at 533 (quotations omitted). The Court held that these "policy judgments" fell short of "a reasoned justification for declining to form a scientific judgment." *Id.* at 533-34.

Guardians argues that, "[a]s in *Massachusetts* [*v. EPA*], the agency here justified its failure to make the required scientific and technical determination on policy grounds, with EPA citing its desire to work on other rulemakings that it deems to be a higher priority, and budgetary constraints." Pet'rs' Br. at 33. Guardians thus contends that EPA's action cannot survive review pursuant to the principles enunciated in *Massachusetts v. EPA*. We are not persuaded.

EPA's reasons for denying the petition for rulemaking in this case differ in important respects from the reasons it proffered in *Massachusetts v. EPA*. First, in *Massachusetts v. EPA*, the agency incorrectly determined that it had no authority to regulate carbon dioxide in motor vehicle emissions as an "air pollutant." In this case, EPA has reached no such conclusion with respect to regulating emissions from coal mines. Rather, EPA has made it clear here that the question whether to list coal mines has yet to be decided. This difference is significant because the Court in *Massachusetts v. EPA* recognized that an agency has "significant latitude as to the manner, *timing*, content, and coordination of its regulations. . . ." 549 U.S. at 533 (emphasis added). EPA's decision in this case is about timing, not about whether to regulate coal mines. The agency's statutory authority to regulate is not an issue in this case.

Second, in *Massachusetts v. EPA*, the Court rejected the agency's alternative ground that, even if EPA possessed authority to regulate, it would decline to do so because regulation would conflict with other administration priorities. 549 U.S. at 533-34. As noted above, EPA had argued "that a number of voluntary Executive Branch programs already provide an effective response to the threat of global warming, that regulating greenhouse gases might impair the President's ability to negotiate with 'key developing nations' to reduce

emissions, and that curtailing motor-vehicle emissions would reflect 'an inefficient, piecemeal approach to address the climate change issue.'" *Id.* at 533 (citations omitted). The Supreme Court rejected these grounds because "it is evident they have nothing to do with whether greenhouse gas emissions contribute to climate change. Still less do they amount to a reasoned justification for declining to form a scientific judgment." *Id.* at 533-34.

It is noteworthy, however, that the Court in *Massachusetts v. EPA* did not say that EPA was obliged to pursue rulemaking to determine whether greenhouse gas emissions contribute to climate change. Rather, the Court was quite plain in saying that, "[u]nder the clear terms of the Clean Air Act, EPA can avoid taking further action . . . if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do." *Id.* at 533.

In *Massachusetts v. EPA*, the agency's reasons for declining to regulate new vehicle emissions were beyond the scope of its delegated authority. In this case, EPA's reasons for denying the petition for rulemaking are entirely consistent with the agency's duties under § 7411. The statute says that the Administrator shall "from time to time" revise the list of categories of stationary sources of air pollutants. § 7411(b)(1)(A). And, under the terms of the statute, the Administrator is authorized to list a source if "in his judgment it causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Id.* This language – "from time to time" and "in his judgment" – implies that the Administrator may exercise reasonable discretion in determining *when* to add a new source to the list of regulated air pollutants. In our view, the statute affords agency officials discretion to prioritize sources

that are the most significant threats to public health to ensure effective administration of the agency's regulatory agenda.

EPA's decision to focus on more significant sources of air pollutants before addressing coal mines is consistent with the statutory objective of reducing hazardous emissions overall. EPA explained that a greater reduction in emissions will be achieved by focusing on electricity generating sectors, which account for 60% of greenhouse gas emissions, than coal mines, which account for 1%. Diverting resources from regulating the most significant sources of air pollution to regulate less-significant sources might increase overall emissions. This would be contrary to the agency's mandate under § 7411. *See* Br. for Resp't at 19 ("EPA *is* diligently implementing its varied obligations under the relevant statutory provision but cannot, because of resource limitations, undertake immediately the additional regulatory action requested by petitioner without sacrifice to its ongoing, higher-priority activities."); *see also Nat'l Cong. of Hispanic Am. Citizens (El Congreso) v. Marshall*, 626 F.2d 882, 889 (D.C. Cir. 1979) ("With its broader perspective, and access to a broad range of undertakings, and not merely the program before the court, the agency has a better capacity than the court to make the comparative judgments involved in determining priorities and allocating resources.").

This case is similar to *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913 (D.C. Cir. 2008). In that case, the court rejected a challenge to the National Marine Fisheries Service ("NMFS")'s denial of a petition for emergency rulemaking to impose speed restrictions to protect the right whale from boating traffic. NMFS denied the petition for rulemaking on the ground that imposing emergency restrictions would divert resources from, and delay development of, a more comprehensive strategy for protecting the whale population.

*Id*. at 920. The agency explained that, "instead of imposing measures in a piecemeal fashion," its comprehensive strategy would be more effective in the long term. *Id*. (quotations omitted).

In upholding the agency's action, the decision in *Defenders of Wildlife* stated that the agency's reason for denying the petition for rulemaking showed it "was well aware of its mandate to protect right whales and was pursuing it by initiating a full notice-and-comment rulemaking on speed restrictions that would potentially be even lower than the ones proposed by petitioners." *Id.* at 921. The decision concluded that the agency's determination "to focus its resources on a comprehensive strategy" was "reasoned and adequately supported by the record." *Id.* Likewise, in this case, we decline to second-guess EPA's decision to prioritize regulatory actions in a way that best achieves the objectives of § 7411.

The reasons supporting EPA's action in this case show that that the agency is diligently implementing § 7411. EPA submitted evidence of its budgetary and staff constraints, explained that it has 45 mandatory rulemakings in progress or under review, and concluded that, in light of these constraints, the best course of action is to prioritize sectors that emit more air pollutants. Guardians apparently believes that, even if EPA has good reasons for prioritizing its regulatory agenda, it cannot do so if this will delay a rulemaking proceeding to list coal mines as a category of stationary sources that emit air pollution. Guardians' postion is contrary to precedent. We find that EPA's action was within the scope of its statutory authority, consistent with the record, and supported by reasoned decisionmaking. Therefore, pursuant to the extremely limited and highly deferential standard that governs

our review of an agency's denial of a rulemaking petition, we deny the petition for review.

### III. CONCLUSION

For the reasons set forth above, the petition for review is hereby denied.