# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 28, 2018       Decided April 23, 2019

No. 17-1273

STATE OF NEW YORK, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND ANDREW
WHEELER, IN HIS OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S. ENVIRONMENTAL PROTECTION
AGENCY,
RESPONDENTS

COMMONWEALTH OF KENTUCKY ENERGY AND ENVIRONMENT
CABINET, ET AL.,
INTERVENORS

On Petition for Review of Final Action of the
United States Environmental Protection Agency

*David S. Frankel*, Assistant Solicitor General, Office of the
Attorney General for the State of New York, argued the cause
for petitioners. With him on the briefs were *Barbara D.
Underwood*, Attorney General, *Steven C. Wu*, Deputy Solicitor
General, *Morgan A. Costello* and *Claiborne E. Walthall*,
Assistant Attorneys General, *Matthew P. Denn*, Attorney
General, Office of the Attorney General for the State of
Delaware, *Valerie S. Edge*, Deputy Attorney General, *Maura*

*Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Carol A. Iancu*, Assistant Attorney General, *George Jepsen*, Attorney General, Office of the Attorney General for the State of Connecticut, *Matthew I. Levine* and *Jill Lacedonia*, Assistant Attorneys General, *Brian E. Frosh*, Attorney General, Office of the Attorney General for the State of Maryland, *Michael F. Strande*, Deputy Attorney General, *Peter F. Kilmartin*, Attorney General, Office of the Attorney General for the State of Rhode Island, *Gregory S. Schultz*, Special Assistant Attorney General, *Joshua Shapiro*, Attorney General, Office of the Attorney General for the Commonwealth of Pennsylvania, *Michael J. Fischer*, Chief Deputy Attorney General, *Kristen M. Furlan*, Assistant Director, *Thomas J. Donovan*, *Jr.*, Attorney General, Office of the Attorney General for the State of Vermont, and *Nicholas F. Persampieri*, Assistant Attorney General. *Steven Santarsiero*, Chief Deputy Attorney General, Office of the Attorney General for the Commonwealth of Pennsylvania, entered an appearance.

*Ariel Solaski*, *Jon A. Mueller*, and *Joshua A. Berman* were on the brief for *amicus curiae* Chesapeake Bay Foundation, Inc. and Sierra Club in support of petitioners' request for vacature.

*Sonya Shea*, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief were *Jeffrey H. Wood*, Acting Assistant Attorney General, *Jonathan D. Brightbill*, Deputy Assistant Attorney General, and *Stephanie L. Hogan*, Attorney, U.S. Environmental Protection Agency.

*Michael DeWine*, Attorney General, Office of the Attorney General for the State of Ohio, *Eric E. Murphy*, State Solicitor, *Samuel C. Peterson*, Deputy Solicitor, *Aaron S. Farmer*, Assistant Attorney General, *Bill Schuette*, Attorney General, Office of the Attorney General for the State of Michigan, *Aaron D. Lindstrom*, Solicitor General, *Jacquelyn A. Quarles*, Deputy

General Counsel, Kentucky Energy and Environment Cabinet, *Curtis T. Hill*, *Jr*., Attorney General, Office of the Attorney General for the State of Indiana, *Thomas M. Fisher*, Solicitor General, *Patrick Morrisey*, Attorney General, Office of the Attorney General for the State of West Virginia, *Lindsay S. See*, Solicitor General, and *Paul A. Martin*, Chief Deputy Attorney General, were on the brief for intervenors States of Ohio, et al. in support of respondent.

*Joshua H. Stein*, Attorney General, Office of the Attorney General for the State of North Carolina, *Marc Bernstein*, Special Deputy Attorney General, and *Asher P. Spiller*, Assistant Attorney General, were on the brief for respondent-intervenor the State of North Carolina.

*Herbery H. Slatery*, *III*, Attorney General, Office of the Attorney General and Reporter for the State of Tennessee, and *J. Peter Murrey*, Assistant Attorney General, were on the brief for *amicus curiae* the State of Tennessee in support of respondents.

*Norman W. Fichthorn*, *E. Carter Chandler Clements*, and *Andrew D. Knudsen* were on the brief for respondent-intervenor Utility Air Regulatory Group.

Before: WILKINS and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: In the Clean Air Act Amendments of 1990, Congress established the "Northeast Ozone Transport Region." The Region consists of Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire,

New Jersey, New York, Pennsylvania, Rhode Island, Vermont, the District of Columbia, and a portion of Virginia.  42 U.S.C. § 7511c(a).

Years later several States in the Region requested the Environmental Protection Agency to expand the Region to include the upwind States of Illinois, Indiana, Kentucky, Michigan, North Carolina, Ohio, Tennessee, West Virginia, and the remaining portions of Virginia.[1]  EPA's refusal is the subject of this lawsuit.

The issue in this case is whether EPA's decision was arbitrary and capricious or otherwise contrary to law.

To appreciate whether EPA should have placed these States in the Northeast Ozone Transport Region, one must understand the regulation of ozone ($O_3$).  Ozone "is one of the primary constituents of smog. Ozone's three-atom arrangement is highly unstable: the third oxygen atom, in a process called oxidation, has an aggressive tendency to react with whatever substance is available. . . .  Exactly how ozone is created and transported in the lower atmosphere,[2] and how it decays, is a matter of extreme complexity.  Ozone is not a direct pollutant.  Vehicles do not emit it, and it does not billow out of smokestacks.  Instead, it is formed mostly from the mixture of two chemical precursors emitted by automobiles and industry: nitrogen oxides ($NO_x$) and a large group of hydrocarbon pollutants called volatile organic compounds (VOCs). . . .  These precursors cook in the sun . . ..  The creation of ozone can thus be seen as a

---

[1] Petitioners in this court are Connecticut, Delaware, Maryland, Massachusetts, New York, Pennsylvania, Rhode Island, and Vermont.

[2] Ozone in the upper atmosphere is considered beneficial, indeed essential, because it absorbs harmful ultraviolet rays.

seasonal phenomenon, with concentrations peaking in the summer, and as a diurnal occurrence, with concentrations peaking during the afternoon and falling during the night. The precursor- and ozone-laden air slowly moves downwind, and as the air mass moves, ozone levels often continue to increase, in part because the ozone has more time to develop, in part because the air mass picks up more precursors along the way. Ultimately, this process can bring high ozone levels to areas hundreds of miles downwind of the pollution sources." *Virginia v. EPA*, 108 F.3d 1397, 1399–1400 (D.C. Cir.), *modified on other grounds*, 116 F.3d 499 (D.C. Cir. 1997).

For these reasons downwind States may be hampered in their efforts to control their ozone pollution levels. Whatever control measures these States impose on sources within their borders, they cannot stop the arrival of pollutants from upwind States. *Id.* at 1400.

States who are or who become members of the Northeast Ozone Transport Region are subject to mandatory ozone controls. 42 U.S.C. § 7511c(b). The controls include enhanced vehicle-inspection and maintenance programs in densely populated areas, reasonably available control technology for emissions sources, vehicle-refueling controls for vapor recovery, and heightened permitting and control requirements applicable to major stationary sources. *See id.* With few exceptions, these requirements apply throughout the region; EPA may lack discretion to tailor the requirements to specific sources. *See id.* § 7511c(b)(1).

EPA may expand the Region pursuant to 42 U.S.C. § 7506a(a). This section provides that on receipt of a State's petition, EPA "may . . . add any State or portion of a State . . . whenever the Administrator has reason to believe that the interstate transport of air pollutants from such State significantly

contributes to a violation of the [air-quality] standard in the transport region." 42 U.S.C. § 7506a(a)(1). In their EPA petition, the States here contended that the upwind States "significantly contribute[d]" to ozone pollution in the Transport Region. EPA exercised what it believed to be its discretion to deny the State's petition.[3] In response to the States' contention, EPA wrote that it would continue to rely on two other Clean Air Act sections: the "good-neighbor" provision and "section 126 petitions." EPA Denial, 82 Fed. Reg. at 51,242.

The good-neighbor provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I), requires that each State's implementation plan prohibit sources within the State from emitting pollutants that "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to" the relevant air-quality standards. If a State plan fails to satisfy the good-neighbor provision, EPA must impose a federal plan that does so. *See id.* § 7410(c)(1), (k).

The other section – section 126 – provides that a State or political subdivision may submit a petition to EPA identifying "any major source or group of stationary sources [that] emits or would emit any air pollutant in violation of" the good-neighbor

---

[3] Several of these States filed suit in the United States District Court for the Southern District of New York to compel EPA to respond to their petition. *See* Complaint at 4, *New York v. McCarthy*, No. 16-cv-7827 (KPF) (S.D.N.Y. Oct. 6, 2016). In 2017, the district court entered a consent decree in which EPA agreed to act on the petition. Consent Decree at 3, *New York v. McCarthy*, No. 16-cv-7827 (KPF) (S.D.N.Y. Jan. 19, 2017). EPA then published a notice that it was proposing to deny the States' petition. Response to December 9, 2013, Clear Air Act Section 176A Petition, 82 Fed. Reg. 6509, 6510 (Jan. 19, 2017). Its denial became final in November 2017. Response to December 9, 2013, Clean Air Act Section 176A Petition, 82 Fed. Reg. 51,238, 51,239 (Nov. 3, 2017) [hereinafter EPA Denial].

provision. *Id*. § 7426(b)*.* If EPA finds such a violation, the source or sources must come into compliance or cease operations. *Id.* § 7426(c).

In refusing to expand the Region in this case,

> EPA noted its historical use of these authorities to address the interstate transport of ozone pollution and the advantages of those rulemakings for addressing current ozone nonattainment problems for the 2008 ozone [air-quality standards]. The EPA explained that it preferred to use these authorities to address the remaining interstate transport problems with respect to the 2008 ozone [air-quality standards] because it believes these authorities allow the agency to develop a tailored remedy that is most effective for addressing any remaining air quality problems.

EPA Denial, 82 Fed. Reg. at 51,242. EPA thus concluded that, compared to the blunt impact of expanding the region, these other tools provided more effective and efficient approaches to the ozone transport problem in light of limited agency resources. *See id.* at 51,239, 51,244, 51,250.[4]

EPA and the State petitioners agree that we should apply to EPA's expansion denial the same standard we would apply to the denial of a petition for rulemaking under the Administrative

---

[4] EPA also determined that its denial was national in scope, as a result of which this court has exclusive jurisdiction over any petition for judicial review. *See* 42 U.S.C. § 7607(b)(1); EPA Denial, 82 Fed. Reg. at 51,250.

Procedure Act. *See* 5 U.S.C. § 553(e).[5] Judicial review of EPA's denial of a rulemaking petition is "'extremely limited' and 'highly deferential.'" *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007) (quoting *Nat'l Customs Brokers & Forwarders Ass'n of Am. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). To set aside the agency's judgment, the court must conclude that EPA had not "adequately explained the facts and policy concerns it relied on" or that those facts did not "have some basis in the record." *WildEarth Guardians v. U.S. EPA*, 751 F.3d 649, 653 (D.C. Cir. 2014) (quoting *WWHT, Inc. v. FCC*, 656 F.2d 807, 817 (D.C. Cir. 1981)). Nonetheless, even with respect to a denial to engage in rulemaking, "[i]n these, as in more typical reviews . . . , we must consider whether the agency's decisionmaking was 'reasoned.'" *Am. Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 5 (D.C. Cir. 1987) (quoting *Prof'l Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1220 (D.C. Cir. 1983)); *see also Defs. of Wildlife v. Gutierrez*, 532 F.3d 913, 919 (D.C. Cir. 2008) ("[W]e look to see whether the agency employed reasoned decisionmaking in rejecting the petition."). We can overturn EPA's denial "only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency." *WildEarth*, 751 F.3d at 653 (quoting *Nat'l Customs*, 883 F.2d at 96–97).

Many of the States' arguments against EPA's denial derive from a fundamental misunderstanding of the scope of EPA's discretion. According to the States, EPA's reason for denying their petition contravened 42 U.S.C. § 7506a(a), the provision permitting EPA to expand a transport region. The States do not

---

[5] The Clean Air Act's judicial-review provision supplants the Administrative Procedure Act with respect to a range of EPA rulemaking actions but not a denial under § 7506a(a). *See* 42 U.S.C. § 7607(d)(1), (9).

9

deny that EPA has discretion to deny a petition to expand the region.  They contend, however, that under § 7506a(a), EPA "may not decline an expansion based solely on a preference to rely on other provisions absent a reasonable basis to believe that these other provisions will effectively, on their own, redress interstate ozone pollution."  Pet'rs' Br. 31.

The States identify nothing in the text of § 7506a(a) to support their proposed limitation on EPA's discretion.  In order to expand a transport region, EPA must have "reason to believe that the interstate transport of air pollutants . . . significantly contributes to a violation of the [air-quality] standard in the transport region." 42 U.S.C. § 7506a(a)(1).  The States describe this requirement as "Congress's selected trigger for expansion" and suggest that EPA must grant a petition when this requirement is met. Pet'rs' Br. 34.  Not so.  The statute requires this showing to be made, but once it has been made, the statute provides only that EPA "may" expand the region, not that it "shall" or "must" do so.  42 U.S.C. § 7506a(a); *accord Michigan v. U.S. EPA*, 213 F.3d 663, 672–73 (D.C. Cir. 2000) (per curiam).  In other words, this requirement is a necessary but not sufficient condition for expansion of the region.

The States attempt to show in a variety of ways that EPA's other Clean Air Act tools will not on their own completely solve the interstate ozone transport problem.  They argue that EPA overlooked data indicating as much.  Even if the States are correct as a factual matter, however, this would not make enlargement of the transport region mandatory.  Nowhere does the statute require EPA to add States to a region unless EPA's other options will eliminate ozone pollution.  The States have given us no reason to question EPA's judgment that its current approach to regulating "the interstate transport of ozone is a proven, efficient, and cost-effective means of addressing downwind air quality concerns that the agency has employed

and refined over nearly two decades." EPA Denial, 82 Fed. Reg. at 51,245.

The States also contend that even if their petition was subject to EPA's discretion, EPA's denial was an abuse of that discretion. In general, EPA "'has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities,' which means that EPA has discretion to determine the timing and priorities of its regulatory agenda." *WildEarth*, 751 F.3d at 651 (quoting *Massachusetts*, 549 U.S. at 527). Here, EPA "adequately explained the facts and policy concerns it relied on," *id.* at 653 (quoting *WWHT*, 656 F.2d at 817): EPA recounted its historical use of the good-neighbor provision and the ongoing downward trend in ozone pollution, *see* EPA Denial, 82 Fed. Reg. at 51,243–47.[6] In light of that undisputed trend, EPA had a sufficient "basis in the record" for predicting that improvement would continue under the current regulatory regime. *WildEarth*, 751 F.3d at 653 (quoting *WWHT*, 656 F.2d at 817). Nothing more is required under the extremely deferential review we must apply here. This is not a case like *Flyers Rights*, in which the agency's reasoning was vacuous or based on secret evidence. *See Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 744–47 (D.C. Cir. 2017).

EPA's reliance on the good-neighbor provision and section 126 petitions is undercut, according to the States, by EPA's delays and improper denials in enforcing those provisions.

---

[6] In reaching its decision, EPA looked only to the 2008 air-quality standards. *Id.* at 51,250. This approach followed from the States' petition, which was also directed at the 2008 standards. *See id.* As EPA noted, the States remain free to petition for enlargement of the transport region in light of the stricter 2015 standards. *See id.* at 51,246.

Unlike the enlargement of a transport region, however, EPA's duties under these other provisions are mandatory. *See* 42 U.S.C. §§ 7410(c)(1), 7426(b). As a result, the States have an independent remedy for whatever shortcomings they perceive in how EPA administers these provisions. They have already had some success on that front. *See, e.g.*, *New York v. Pruitt*, No. 18-cv-406 (JGK), 2018 WL 2976018 (S.D.N.Y. June 12, 2018) (requiring EPA to promulgate delayed federal implementation plans under the good-neighbor provision).

Finally, the States allege that EPA "refused to consider the inequitable burden that the problem of ozone pollution transport places on downwind states." Pet'rs' Br. 63. To the contrary, EPA expressly acknowledged the role of equity among the States in its administration of the Clean Air Act. EPA Denial, 82 Fed. Reg. at 51,249. It determined that its use of the good-neighbor provision advanced that policy. *Id.* (citing *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 519 (2014)). With respect to the Northeast Region, EPA did not find equity irrelevant, as the States contend, but rather determined that any equitable concerns could not alone dictate the disposition of the petition. *See id.*[7]

EPA's denial of the States' petition complied with the Clean Air Act and was a reasonable exercise of the agency's

---

[7] "Thus, the agency's approach to implementing the good neighbor provision explicitly considers the equity concerns raised by commenters when apportioning emission reduction responsibility among multiple upwind states. However, the agency does not believe Congress intended for it to exercise its discretion under [§ 7506a] to resolve an alleged economic disparity or competitive disadvantage that is inherent in the creation of the [ozone transport region] under [§ 7511c] in a manner that is unrelated to the primary purpose of addressing interstate transport." *Id.*

discretion. We therefore deny the States' petition for judicial review.

*So ordered.*