# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 12, 2018             Decided April 26, 2019

No. 17-1201

ENVIRONMENTAL DEFENSE FUND,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND ANDREW
WHEELER, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

AMERICAN CHEMISTRY COUNCIL, ET AL.,
INTERVENORS

———

On Petition for Review of Final Action of the
United States Environmental Protection Agency

———

*Robert P. Stockman* argued the cause and filed the briefs for petitioner.

*Phillip R. Dupré*, Attorney, United States Department of Justice, argued the cause for respondents. With him on the brief was *Jeffrey H. Wood*, then-Acting Assistant Attorney General.

*Donald P. Gallo, James W. Conrad, Jr., Richard S. Moskowitz, Peter D. Keisler, Samuel B. Boxerman, Timothy K.*

*Webster*, *C. Frederick Beckner*, *III*, *Judah Prero*, *Samina M. Bharmal*, *David B. Weinberg*, *Martha E. Marrapese*, *Roger H. Miksad*, *Linda E. Kelly*, *Steven P. Lehotsky*, and *Michael B. Schon* were on the brief for intervenors in support of respondent United States Environmental Protection Agency. *Michael D. Boucher* and *Warren U. Lehrenbaum* entered appearances.

Before: GARLAND, *Chief Judge*, MILLETT, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:   The Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, requires the Environmental Protection Agency to publish an inventory of chemicals manufactured or processed in the United States. 15 U.S.C. § 2607(b)(1).   The 2016 Amendments to the Act directed the EPA to issue a rule establishing a process for updating the Inventory.   The EPA promulgated that rule the following year.   *See* TSCA Inventory Notification (Active-Inactive) Requirements, 82 Fed. Reg. 37,520 (Aug. 11, 2017). As part of that rulemaking process, the EPA abandoned questions that had required each company seeking to keep the chemical identity of a substance confidential to substantiate that the chemical identity "is not readily discoverable through reverse engineering."   15 U.S.C. § 2613(c)(1)(B)(iv).

The Environmental Defense Fund challenges that 2017 rule on the ground that it unlawfully shields information from public disclosure.   Environmental Defense is correct that the EPA's elimination of questions pertaining to reverse engineering was arbitrary and capricious, and so we grant the petition in that respect.   We otherwise deny the petition for review.

**I**

**A**

Congress passed the Toxic Substances Control Act ("Control Act") in 1976 to "assure that * * * innovation and commerce in * * * chemical substances and mixtures do not present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(3). Congress charged the EPA with administering the Control Act, which included the tasks of "compil[ing], keep[ing] current, and publish[ing] a list of each chemical substance which is manufactured or processed in the United States." *Id*. § 2607(b)(1). That list, commonly referred to as the "Inventory," contains a confidential portion and a non-confidential portion. *Id*. § 2607(b)(4)(B)(i). Both portions are publicly accessible on the EPA's website. But the confidential portion identifies substances by "a structurally descriptive generic name" rather than a "specific chemical identity." 15 U.S.C. § 2613(c)(1)(C).[1] The Inventory currently lists approximately 86,000 chemicals, roughly 18,000 of which are classified as confidential.

"[C]oncern[ed] about the pace of EPA's work" keeping the Inventory up to date, H.R. REP. NO. 176, 114th Cong., 1st Sess. 12 (2015), Congress amended the Control Act in 2016. *See* Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114–182, 130 Stat. 448 (2016) (codified at 15 U.S.C. § 2601 *et seq.*). As relevant here, the 2016

---

[1] *See How to Access the TSCA Inventory*, EPA, https://www.epa.gov/tsca-inventory/how-access-tsca-inventory #download (last visited April 17, 2019).

amendments directed the EPA to promulgate a rule—known as the Inventory Rule—that would impose new reporting requirements for chemical manufacturers and processors ("chemical companies"). *See* 15 U.S.C. § 2607(b)(4)–(5). Specifically, the Inventory Rule requires chemical companies to notify the EPA of each chemical on the Inventory that they had "manufactured or processed for a nonexempt commercial purpose" during the ten-year period prior to June 22, 2016. *Id*. § 2607(b)(4)(A)(i). Each chemical for which the EPA receives such a notification would be labeled "active," while all the rest would be labeled "inactive." *Id*. § 2607(b)(4)(A)(ii)–(iii), (b)(5)(B)(i)–(iii). Chemical companies also have to submit a notification form identifying in advance any inactive chemical substance for which they intend to resume manufacturing or processing going forward. *Id*. § 2607(b)(5)(B)(i).

Congress directed the EPA to update the confidential portion of the Inventory as well. In particular, the 2016 amendments to the Control Act instruct the EPA to (i) "require any manufacturer or processor of a chemical substance on the confidential portion of the [Inventory] that seeks to maintain an existing claim for protection against disclosure of the specific chemical identity of the chemical substance as confidential" to notify the EPA of that request; (ii) demand that chemical companies provide "substantiation" for those claims of confidentiality; and (iii) "move any active chemical substance for which no [confidentiality] request [i]s received" to the non-confidential portion of the list. 15 U.S.C. § 2607(b)(4)(B).

When an application to maintain confidential treatment is received, the EPA must independently determine whether confidentiality is warranted. To that end, Congress directed the EPA to "promulgate a rule that establishes a plan to review

all claims to protect the specific chemical identities" asserted as confidential.   15 U.S.C. § 2607(b)(4)(C).

Once the EPA compiles the initial list of active chemical substances, the Control Act affords the agency up to seven years to complete its review of which of those active chemical substances should receive confidential treatment.   15 U.S.C. § 2607(b)(4)(E).   For those chemicals that remain on the confidential portion of the Inventory, the EPA must "develop a system to assign a unique identifier to each specific chemical identity" and must "apply that identifier consistently to all information relevant to the applicable chemical substance[.]" *Id*. § 2613(g)(4)(A).

The EPA promulgated the final Inventory Rule in August 2017.   82 Fed. Reg. 37,520 (codified at 40 C.F.R. §§ 710.23–710.39).   The Inventory Rule implements the retrospective and prospective reporting requirements that Congress required. Companies that manufactured and processed chemicals during the ten years prior to June 22, 2016 must submit a "Notice of Activity Form A."   *See id*. at 37,523, 37,525.   After the EPA designates substances as active or inactive, those that intend to revive the manufacture or processing of an inactive chemical must submit a "Notice of Activity Form B."   *See id*.   These Forms also allow a manufacturer or processor of a chemical that was originally on the confidential portion of the Inventory to seek to continue that confidential status going forward. And it may do so regardless of whether that manufacturer or processor was the one that had initially requested that the chemical identity be shielded from public disclosure.   *Id*. at 37,527.

To assert a claim of confidentiality, the Control Act requires the requesting company to certify that:

(i)     My company has taken reasonable measures to protect the confidentiality of the information;

(ii)     I have determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law;

(iii)     I have a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of my company; and

(iv)     I have a reasonable basis to believe that the information is not readily discoverable through reverse engineering.

82 Fed. Reg. at 37,544 (codified at 40 C.F.R. § 710.37(e)); *see also* 15 U.S.C. § 2613(c)(1)(B) (establishing these criteria).

But the Control Act does not stop there. The Act further mandates that, once a claim of confidentiality is asserted, its proponent must "substantiate" the need for secrecy. 15 U.S.C. § 2613(c)(3); *see also id.* § 2607(b)(4)(B)(iii) (instructing the EPA to "require the substantiation of [confidentiality] claims"). To implement that substantiation requirement, the Inventory Rule requires applicants to answer the following questions:

- Do you believe that the information is exempt from [the Act's] substantiation [requirement]?

- Will disclosure of the information likely result in substantial harm to your business's competitive position?

- To the extent your business has disclosed the information to others (both internally and externally), what precautions has your business taken?

- Does the information appear in any public documents, including (but not limited to) safety data sheets, advertising or promotional material, professional or trade publication, or any other media or publications available to the general public?

- Is the claim of confidentiality intended to last less than 10 years[?]

- Has EPA, another federal agency, or court made any confidentiality determination regarding information associated with this chemical substance?

- Is the confidential chemical substance publicly known to have ever been offered for commercial distribution in the United States?

*See* 82 Fed. Reg. at 37,544 (codified at 40 C.F.R. § 710.37(c)).

The Inventory Rule does not expressly incorporate all of the Act's many procedural requirements. Nor does it address the Control Act's requirement, 15 U.S.C. § 2613(g)(4), that the EPA assign "unique identifiers" to chemicals that it eventually

decides should be listed on the confidential portion of the Inventory.

**B**

The Environmental Defense Fund is an organization that promotes public awareness of the environmental and health risks that chemicals pose. *See* Environmental Defense Standing Addendum 3. Environmental Defense timely petitioned this court for review of the Inventory Rule. *See* 15 U.S.C. § 2618(a). A group of chemical-industry associations ("Industry") intervened in support of the EPA.

**II**

We start, as we must, by verifying that Environmental Defense has Article III standing to challenge the Inventory Rule. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) ("We have 'an obligation to assure ourselves' of litigants' standing under Article III.") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). To that end, Environmental Defense must demonstrate that it has suffered a concrete and particularized injury in fact that is both fairly traceable to the EPA's action and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

Environmental Defense has succeeded in that task by asserting a quintessential claim of informational standing. The law is settled that "a denial of access to information" qualifies as an injury in fact "where a statute (on the claimants' reading) requires that the information 'be publicly disclosed' and there 'is no reason to doubt their claim that the information would help them.'" *Friends of Animals v. Jewell*, 824 F.3d 1033, 1040–1041 (D.C. Cir. 2016) (quoting *Ethyl Corp. v.*

*EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002)); *see also FEC v. Akins*, 524 U.S. 11, 21 (1998).   Here, Environmental Defense claims that the Control Act requires disclosure to it (and the public at large) of chemical identities that the Inventory Rule will keep secret.   And "there is no reason to doubt" that access to additional information about chemicals manufactured or processed in the United States will promote Environmental Defense's environmental interests, research, and educational activities.   *Jewell*, 824 F.3d at 1041 (quoting *Ethyl Corp.*, 306 F.3d at 1148); *see generally* Environmental Defense Standing Addendum.   Finally, a decision by this court to vacate or require reconsideration of the rule would remedy that asserted harm by requiring the disclosure of additional information. *See Wertheimer v. FEC*, 268 F.3d 1070, 1074–1075 (D.C. Cir. 2001).

## A

Environmental Defense challenges five distinct features of the Inventory Rule:   (i) the EPA's exclusion of substantiation questions regarding reverse engineering; (ii) the Rule's criteria for "maintaining" a confidentiality claim; (iii) the EPA's choice not to incorporate certain regulatory requirements into the Inventory Rule; (iv) the EPA's failure to implement the Act's "unique identifier" requirements in this rulemaking; and (v) the Rule's exemption of exported chemicals from its notification requirements.   We must uphold the EPA's Rule unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2)(A); *see also* 15 U.S.C. § 2618(c)(1)(B).   Under that standard of review, only Environmental Defense's first claim succeeds.

**1**

Environmental Defense challenges the EPA's failure to require companies to "substantiate" that a chemical identity they wish to keep confidential is not "readily discoverable through reverse engineering." *See* 15 U.S.C. § 2613(c)(1)(B)(iv), (c)(3). We agree that the reverse-engineering aspect of the Inventory Rule comes up short.

**a**

At the outset, the EPA and Industry argue that Environmental Defense lacks standing to challenge the agency's choice of substantiation questions. In their view, it is "merely speculative" that the inclusion of any particular question "would lead EPA to disapprove—or would cause a potential claimant not to submit—a request to maintain a specific chemical identity on the confidential portion of the * * * Inventory." EPA Br. 35 (formatting altered).

That makes little sense. Substantiation questions are the EPA's tool for gathering the information it uses to evaluate confidentiality claims. They are, in other words, an indispensable procedural step in the agency's confidentiality determination. Because Environmental Defense asserts an informational injury that arises directly from confidentiality determinations, "[a]ll that is necessary" for standing is for Environmental Defense "to show that the procedural step was connected to the substantive result." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002); *see also Center for Biological Diversity v. EPA*, 861 F.3d 174, 184 (D.C. Cir. 2017) (petitioner "need not show that but for the alleged procedural deficiency the agency would have reached a different substantive result"). Informing the confidentiality decision is the *raison d'être* of the substantiation questions.

And that is the end of the matter as far as standing is concerned. *See Veneman*, 289 F.3d at 94–95.

**b**

When a company makes a confidentiality claim under the Act, it must both "assert" and then "substantiate" the need for such protection.   15 U.S.C. § 2613(c)(1), (3).   An "assertion" of a confidentiality claim must "include a statement" that, among other things, the claimant has a "reasonable basis to believe that the information is not readily discoverable through reverse engineering."    *Id*.   § 2613(c)(1)(B)(iv).    The Inventory Rule properly effectuates that requirement.   82 Fed. Reg. at 37,544 (codified at 40 C.F.R. § 710.37(e)(4)).   The problem for the EPA is that the Control Act does not accept a company's assertions at face value.   Quite the opposite, the statute specifically requires the company to "substantiate" its confidentiality claim.   15 U.S.C. § 2613(c)(3).

In the Notice of Proposed Rulemaking for the Inventory Rule, the EPA listed more than twenty substantiation questions, including questions related to each of the four statutorily required assertions.   82 Fed. Reg. 4255, 4268–4269 (Jan. 13, 2017); *see* 15 U.S.C. § 2613(c)(1)(B).   To address reverse engineering, the proposed questions were:

> Does this particular chemical substance leave the site of manufacture in any form, *e.g.*, as product, effluent, emission?   If so, what measures have been taken to guard against the discovery of its identity?   * * * If the chemical substance leaves the site in a product that is available to the public or your competitors, can the chemical substance be identified by analysis of the product?

*Id*. at 4268.

By the agency's own admission, the final rule sets forth an "extensively re-written" list of questions. 82 Fed. Reg. at 37,527, 37,537. The EPA scrapped, among other things, *all* substantiation questions related to the requirement that a substance's chemical identity not be susceptible to reverse engineering. *See id*. at 37,544.

An agency acts arbitrarily and capriciously when it offers inaccurate or unreasoned justifications for a decision. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Clean Air Council v. Pruitt*, 862 F.3d 1, 10 (D.C. Cir. 2017) (concluding that the EPA's explanation for a decision was "inaccurate and thus unreasonable").

That is precisely what the EPA did here. Its omission of any inquiry into a chemical identity's susceptibility to reverse engineering effectively excised a statutorily required criterion from the substantiation process. *See* 15 U.S.C. § 2613(c)(1)(B)(iv), (c)(3). Lest there be any doubt, the agency conceded at oral argument that the Inventory Rule eliminated the only questions that substantiate the assertion that "the information is not readily discoverable through reverse engineering." *Id*. § 2613(c)(1)(B)(iv); *see* Oral Argument Tr. at 35:42–35:46 ("These questions do not specifically encompass reverse engineering.").

The agency's explanation for excising that criterion was, nonsensically, a denial that it had done so. Specifically, the EPA explained that the omission is "intended to more succinctly *secure answers* for the basis of the [confidentiality] *assertions*[.]" 82 Fed. Reg. at 37,537 (emphasis added). But

succinctness means no unnecessary words; it does not mean no words at all. What the Inventory Rule actually does is *decline* altogether to "secure answers" substantiating a company's "assertion" that its chemical product cannot be reverse engineered. *Id*. But it makes no sense to treat as confidential the chemical identity of a substance that can readily be discovered through reverse engineering—as the EPA itself agrees. Oral Argument Tr. 24:48–24:59 ("[D]oes the EPA agree that if something is readily reversibly engineered [then] it doesn't qualify for confidential treatment?" [Agency counsel]: "Yes.").

Yet the EPA's Rule offers no sensible explanation at all for that gap in substantiation, nor does it even acknowledge the consequence of its omission. That error is fatal. The Inventory Rule is arbitrary and capricious to the extent that it omits any substantiation requirement pertaining to reverse engineering. *See State Farm*, 463 U.S. at 43; *Clean Air Council*, 862 F.3d at 10.

**2**

Next, Environmental Defense contends that the Inventory Rule enables a broader array of companies to "maintain" an existing confidentiality claim than the Control Act allows. 15 U.S.C. § 2607(b)(4)(B)(ii). That is incorrect.

Under the Control Act, if a manufacturer or processor wants the confidential status of an already listed chemical to continue on the updated Inventory, it must submit a request to the EPA. 15 U.S.C. § 2607(b)(4)(B)(ii). The EPA reads that statutory directive to allow "any manufacturer or processor [to] seek to maintain an existing claim for specific chemical identity," even if the company was not the source of the "original claim that caused the specific chemical identity to be

listed on the confidential portion of the Inventory." 82 Fed. Reg. at 37,527. That is, the Inventory Rule allows any company that manufactures or processes substances already on the confidential Inventory to seek perpetuation of that status, regardless of whether it was the company that claimed confidentiality in the first place.

Environmental Defense reads the statutory language differently. In its view, the Control Act permits only the original claimant or its successor-in-interest to preserve confidential treatment.

The EPA wins this debate.

For starters, the text of the Control Act does not require Environmental Defense's rule. The relevant statutory language is silent as to whether a company may maintain an existing claim of confidentiality if it was not the original claimant. *See* 15 U.S.C. § 2607. Congress thus left that question of implementation to the expertise of the EPA. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). So we must sustain the EPA's position if it "is based on a permissible construction of the statute." *Id.* at 843.

The EPA's position easily clears that hurdle. Allowing any chemical manufacturer or processor to seek continued protection against public disclosure for its chemical substance fits comfortably within the statutory text. Section 2607's sole limitation on the class of manufacturers and processors that may wish to maintain an existing confidentiality claim is that they manufacture or process "a chemical substance on the confidential portion of the [Inventory]." 15 U.S.C. § 2607(b)(4)(B)(ii). "[A]*ny*" of those manufacturers or processors may apply. *Id.* (emphasis added).

Nothing in the word "maintain" contracts that broad language. To "maintain" commonly means "to keep in an existing state." MERRIAM-WEBSTER DICTIONARY 431 (def. 1) (7th ed. 2016). The word imposes no limit on *who* may do that maintaining. A recent homebuyer, for example, might maintain the existing landscaping. New team players certainly hope to maintain the winning streak of last year's team. So too here, the statutory language naturally permits a manufacturer or processor to maintain a confidentiality status first obtained by another.

Environmental Defense agrees that an original claimant's successor-in-interest can "maintain an existing claim." But nothing in the statutory text requires drawing an impermeable line there. The EPA reasonably concluded that the claimant's corporate genealogy is beside the point.

Environmental Defense reasons that all claimants who were not original claimants or their successors-in-interest should be required to file a new claim of confidentiality under 15 U.S.C. § 2613. That route would afford the EPA just ninety days for review, 15 U.S.C. § 2613(g)(1)(A), as opposed to the seven years allowed to decide whether existing claims of confidentiality should continue, *id*. § 2607(b)(4)(E).

Environmental Defense's approach is no real alternative at all. The Control Act provides that for active substances, if "no request [i]s received to *maintain an existing claim* for protection against disclosure," the EPA "*shall*" move that chemical substance "from the confidential portion of the list * * * to the nonconfidential portion of that list." 15 U.S.C. § 2607(b)(4)(B)(iv) (emphasis added). And the statute requires that those requests to maintain confidentiality had to be filed "not later than 180 days after the date on which the

final rule is published in the Federal Register," *id.* § 2607(b)(4)(A)(i)—that is, by February 7, 2018. That approach leaves insufficient time for new applications for confidentiality to be filed and acted upon before the previously confidential chemical identity is publicly disclosed. And once that disclosure occurs, the cat is out of the bag. There will be no confidentiality for a new claimant to obtain. *See id*. § 2607(b)(8) ("No person may assert a new claim * * * for protection from disclosure of a specific chemical identity of any active or inactive substance * * * that is not on the confidential portion of the [Inventory]."); *see also* S. REP. NO. 67, 114th Cong., 1st Sess. 24 (2015) (explaining that "information that is * * * already publicly available cannot be newly protected as [confidential] under [the Act]").

Environmental Defense finds that consequence untroubling, reasoning that any company that had not already claimed confidentiality for a chemical that it manufactures or processes should be deemed to have forfeited the claim. Environmental Defense Br. 40–41. But that ignores the myriad circumstances in which it would have made no sense for a company to submit its own confidentiality claim. For instance, there would be no need for more than one manufacturer in a co-manufacturing arrangement to submit a confidentiality claim for the same chemical substance. Likewise, an importer notified by a supplier that a chemical already was on the confidential portion of the list would have had no reason to submit a redundant claim. The EPA sensibly determined that companies like those "legitimately benefit from the confidential status of a specific chemical identity," and therefore should have the opportunity to seek confidentiality going forward. 82 Fed. Reg. at 37,527.

For all of those reasons, the EPA acted well within its discretion in concluding that, as part of the Inventory update,

any manufacturer or processor of a chemical substance can file a claim to maintain the chemical substance's confidentiality.

**3**

The Inventory Rule provides that information claimed to be confidential "will be treated and disclosed in accordance with 40 C.F.R. part 2, subpart B," which regulates the EPA's treatment of confidential business information. 82 Fed. Reg. at 37,543 (codified at 40 C.F.R. § 710.37(a)).[2] Environmental Defense takes exception to that provision because the subpart B regulations do not mirror all of the Control Act's procedural requirements.

At the outset, the EPA and Industry again contest Environmental Defense's standing to make this claim. And once again, they try to dress a merits argument in jurisdictional garb. Environmental Defense is challenging provisions of the Inventory Rule that it views as withholding information from public disclosure. That is the same type of individualized and direct informational injury that parties have standing to challenge. *See Friends of Animals*, 824 F.3d at 1040–1041.

Turning to the merits, Environmental Defense argues that the Inventory Rule's disclosure procedures unlawfully fail to incorporate the Control Act's requirements that the EPA (i) review claims within ninety days, 15 U.S.C. § 2613(g)(1)(A); (ii) inform the claimant of the EPA's denial of a confidentiality claim and allow only thirty days for appeal, *id.* § 2613(g)(2); and (iii) publicly disclose any non-confidential aspects of its confidentiality decisions, *id.* § 2625(j)(1).

---

[2] 40 C.F.R. part 2, subpart B is codified at 40 C.F.R. §§ 2.201–2.311.

That claim fails. Environmental Defense cites nothing in the regulation that contradicts those statutory obligations. The EPA acknowledges, as it must, that the Act "applies of its own force," EPA Br. 44, and nothing in the Inventory Rule countermands or frustrates those statutory obligations. The Inventory Rule's provisions simply complement and elaborate upon some of the statutory requirements without displacing the others.

Environmental Defense seems to want the statutory requirements duplicated in the rule for duplication's sake. That is not necessary. "[A] regulation can never 'trump the plain meaning of a statute.'" *Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013) (quoting *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 11 (D.C. Cir. 2002)). Should the EPA's future implementation of these provisions of the Inventory Rule fall short of statutory mandates, a challenge can be raised then. But there is nothing facially troubling about the failure to copy every relevant statutory obligation into the regulation.

**4**

Environmental Defense's fourth objection to the Inventory Rule is that it fails to implement the statutory scheme for assigning a unique public identifier for each chemical identity it decides to keep confidential. Environmental Defense points to the Control Act's requirement that the EPA "develop a system to assign a unique identifier to each specific chemical identity for which the Administrator approves a request for protection from disclosure," and then "apply that identifier consistently to all information relevant to the applicable chemical substance[.]" 15 U.S.C. § 2613(g)(4)(A)(i)–(ii). The Control Act also directs the EPA to "annually publish and update a list of chemical substances, referred to by their unique

identifiers, for which claims to protect the specific chemical identity from disclosure have been approved, including the expiration date for each such claim[.]" *Id*. § 2613(g)(4)(B).

There is no question that the Inventory Rule does not implement those requirements. But the APA is patient. Or at least more patient than Environmental Defense. Agencies need not address all regulatory obligations "in one fell swoop." *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 588 (D.C. Cir. 2004). And nothing in the Control Act requires the EPA to develop and implement the unique-identifier system alongside its Inventory review process. Unlike the statutory command to promulgate the Inventory Rule within a year, *see* 15 U.S.C. § 2607(b)(4)(A)(i), the Act establishes no deadline for the EPA's development and implementation of unique identifiers, *see id*. § 2613(g)(4). And it is not unreasonable for the EPA to defer that process while it first starts the process of determining how many and which chemical substances will be accorded confidential treatment. It is not for us to "second-guess EPA's decision to prioritize" those regulatory tasks. *WildEarth Guardians v. EPA*, 751 F.3d 649, 656 (D.C. Cir. 2014).[3]

Environmental Defense separately complains that the EPA failed to address its comment about implementing the unique identifier system. To be sure, an agency's "fail[ure] to respond to major substantive comments" can render a decision

---

[3] This is not a case in which the agency is sitting on its hands. The EPA solicited comments "on approaches for assigning and applying unique identifiers" *before* the final Inventory Rule was promulgated, 82 Fed. Reg. 21,386 (May 8, 2017), solicited further comments on "an additional approach" a few months later, 83 Fed. Reg. 5623 (Feb. 8, 2018), and published its final policy determination before briefing in this case concluded, 83 Fed. Reg. 30,168 (June 27, 2018).

arbitrary and capricious. *Sierra Club v. EPA*, 863 F.3d 834, 838 (D.C. Cir. 2017). At the same time, an agency need not "discuss every item of fact or opinion included" in comments. *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting *Automotive Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C. Cir. 1968)). Environmental Defense did not submit "major substantive comments" requesting that the EPA implement the unique identifier system during this rulemaking. *Sierra Club*, 863 F.3d at 838. It merely referenced unique identifiers as part of an "example" of statutory requirements that are "broader than just Inventory listings." J.A. 22. Nothing in the APA saddles agencies with the crushing task of responding to every single example cited in every single comment, especially where, as here, the reference is to a matter that the agency permissibly was not yet regulating.

**5**

Lastly, Environmental Defense objects to the exclusion of export-only chemicals from the Inventory Rule's requirement that chemical companies notify the EPA of chemical substances being manufactured or processed. We hold that the EPA's decision reflected a reasonable interpretation of the Control Act.

Under the Control Act, the EPA "shall require manufacturers" and "may require processors" to "notify the Administrator * * * of each chemical substance on the [Inventory] that the manufacturer or processor * * * has manufactured or processed *for a nonexempt commercial purpose* during the 10-year period ending on the day before June 22, 2016." 15 U.S.C. § 2607(b)(4)(A)(i) (emphasis added). Without any statutory guidance as to what counts as a "nonexempt commercial purpose," the agency concluded it

was consistent with the Control Act to exclude, among other things, "[t]he manufacturing or processing of a chemical substance solely for export from the United States * * *." 82 Fed. Reg. 37,541 (codified at 40 C.F.R. § 710.27(a)(4)).

Environmental Defense insists that the statute itself declares exports to be a "nonexempt commercial purpose" because Section 2611, which applies specifically to exports, says that "this chapter (*other than section 2607 of this title*) shall not apply to any chemical substance, mixture, or to an article containing a chemical substance or mixture" that is manufactured or processed for export. 15 U.S.C. § 2611(a)(1) (emphasis added). As Environmental Defense sees it, Congress's decision to carve regulation under Section 2607 out of the statute's otherwise-broad exemption for exported chemicals means that Congress intended for Section 2607 to apply to exports.

We agree with Environmental Defense that the upshot of Section 2611 is that Section 2607 "shall * * * apply" to chemicals for export. But what does it mean to "apply" 15 U.S.C. § 2607—a nearly four thousand-word chunk of the statute—to exported chemicals? Congress did not say.

In light of this congressional silence, the Rule's narrow excision of exports from one reporting requirement passes muster. *See Chevron*, 467 U.S. at 843. The EPA explained that Section 2611 insulates export chemicals from numerous other statutory requirements, including prospective reporting requirements under 15 U.S.C. § 2604. 82 Fed. Reg. at 37,528; *see* 15 U.S.C. § 2611(a)(1) (providing that "this chapter," including § 2604, "shall not apply to" export-only chemicals); *id*. § 2604(a) (imposing prospective notification requirements); *id*. § 2607(b)(1) ("[The Inventory] shall at least include each chemical substance which any person reports, under section

2604 of this title or subsection (a) of this section, is manufactured or processed in the United States."). So all the EPA did here is exempt those same export chemicals from the Act's *retrospective* reporting requirements in Section 2607. *See* 15 U.S.C. § 2607(b)(4)(A)(i). To decide otherwise would have made compliance more onerous for previous manufacturers of exported chemicals than for future manufacturers of exported chemicals. Whatever Congress meant by the cross-reference to Section 2607 in Section 2611, the EPA reasonably concluded it was not to impose that illogical regulatory construct.

Nor did the EPA fail to provide sufficient notice in the Notice of Proposed Rulemaking that export-only chemicals would be excluded from the statute's definition of "nonexempt commercial purpose." *See* Environmental Defense Br. 57. The Notice advised that the EPA intended to define "nonexempt commercial purpose" consistently with the "commonly-accepted usage" of that phrase at the time the Control Act was amended. 82 Fed. Reg. at 4259. Two of the three legal sources the agency cited for that common usage—15 U.S.C. § 2604 and 40 C.F.R. § 720.30—exempt export-only chemicals from reporting requirements. *Id*. Unsurprisingly, then, the agency received several comments requesting that it add the export-only exemption that was missing from the proposed rule. *See, e.g.*, J.A. 47 (Fertilizer Institute comments); J.A. 68 (Biobased and Renewable Products Advocacy Group comments); J.A. 89 (Vinyl Institute comments); J.A. 118 (Pine Chemicals Association International comments). Environmental Defense, like those other commenters, "should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079–1080 (D.C. Cir. 2009) (formatting altered).

* * * * *

For all of those reasons, we order a limited remand, without vacatur, for the EPA to address its arbitrary elimination of substantiation questions regarding reverse engineering. We otherwise deny the petition for review.

*So ordered*.