# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2020           Decided March 13, 2020

No. 18-5239

CAMPAIGN LEGAL CENTER AND DEMOCRACY 21,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00752)

———

*Tara Malloy* argued the cause for appellants. With her on the briefs were *Paul M. Smith*, *Megan P. McAllen*, *Mark P. Gaber*, *Fred Wertheimer*, and *Donald J. Simon*. *Joseph G. Hebert* entered an appearance.

*Stuart C. McPhail*, *Adam J. Rappaport*, and *Laura C. Beckerman* were on the brief for *amicus curiae* Citizens for Responsibility and Ethics in Washington in support of plaintiffs-appellants.

*Haven G. Ward*, Attorney, Federal Election Commission, argued the cause for appellee. With her on the brief were *Kevin Deeley*, Associate General Counsel, and *Kevin P. Hancock*,

Acting Assistant General Counsel. *Charles P. Kitcher* and *Tanya Senanayake*, Attorneys, entered appearances.

*George J. Terwilliger III* and *Nathan R. Pittman* were on the brief for intervenors-appellees F8, LLC, et al.

Before: TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring Opinion filed by *Senior Circuit Judge* EDWARDS.

PER CURIAM: The Federal Election Commission dismissed three administrative complaints alleging violations of the Federal Election Campaign Act's disclosure requirements. Plaintiffs Campaign Legal Center and Democracy 21 contend that the dismissals were "contrary to law." 52 U.S.C. § 30109(a)(8)(C). The district court disagreed and granted summary judgment for the Commission. *Campaign Legal Ctr. v. FEC*, 312 F. Supp. 3d 153, 166 (D.D.C. 2018). Because the Commission provided a reasonable basis for the dismissals, we affirm the court's grant of summary judgment.

I

As the Supreme Court has repeatedly declared, the electorate has an interest in knowing "where political campaign money comes from and how it is spent by the candidate." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (internal quotation marks omitted); *see McCutcheon v. FEC*, 572 U.S. 185, 223 (2014). To that end, the Federal Election Campaign Act (FECA) imposes disclosure requirements on those who give and spend money to influence elections. The "straw donor"

provision, 52 U.S.C. § 30122, is designed to ensure accurate disclosure of contributor information. It provides that "[n]o person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." FECA also imposes distinct disclosure requirements on organizations that qualify as "political committees." *Id.* §§ 30102, 30103, 30104; *see id.* § 30101(4) (defining "political committee").

Any person may file a complaint alleging a violation of FECA with the Federal Election Commission. *Id.* § 30109(a)(1). After considering the complaint and any responses, the Commission opens an investigation when four of its six members find "reason to believe that a person has committed, or is about to commit, a violation" of FECA. *Id.* § 30109(a)(2). If the Commission dismisses a complaint, FECA provides a cause of action for "[a]ny party aggrieved" by the dismissal. *Id.* § 30109(a)(8)(A). If the court finds the dismissal to be "contrary to law," it "may direct the Commission to conform" with its ruling "within 30 days." *Id.* § 30109(a)(8)(C).

Between August 2011 and April 2015, the plaintiffs filed five administrative complaints with the Commission. *See id.* § 30109(a)(1). Each complaint alleged that various individuals made political contributions to Super PACs by using closely held corporations and limited liability companies (LLCs) as straw donors, thereby violating § 30122.[1] Four of the

---

[1] "A PAC is a business, labor, or interest group that raises or spends money in connection with a federal election, in some cases by contributing to candidates. A so-called 'Super PAC' is a PAC that makes only independent expenditures and cannot contribute to candidates." *McCutcheon*, 572 U.S. at 193 n.2.

complaints also alleged that those corporate entities violated FECA by failing to register and file reports as political committees. *See id.* §§ 30102, 30103, 30104.

The Commission's General Counsel issued reports on the five complaints. For four complaints, the General Counsel recommended that the Commission find reason to believe that a violation of the straw donor provision (§ 30122) had occurred, but that it should take no action concerning the alleged violations of the political committee provisions (§§ 30102, 30103, 30104). For the fifth complaint, the General Counsel did not recommend that the Commission find reason to believe that any violation of FECA had occurred. In February 2016, the commissioners deadlocked -- three votes to three -- on whether to open an investigation into any of the complaints. The commissioners then voted unanimously to dismiss all five complaints.

The three "controlling" commissioners who voted against opening an investigation issued a statement of reasons regarding their votes, which, under our case law, "necessarily states the agency's reasons for acting as it did." *FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1476 (D.C. Cir. 1992). The commissioners explained that, "in an exercise of the Commission's prosecutorial discretion," they declined to find reason to believe a violation of § 30122 occurred. Statement of Reasons of Chairman Petersen and Commissioners Hunter and Goodman (Statement of Reasons) at 14 (J.A. 160).

The controlling commissioners described the application of § 30122 to closely held corporations and corporate LLCs as a question of first impression, noting that, until the Supreme Court's decision in *Citizens United*, federal law had categorically prohibited corporate contributions. *See Citizens United v. FEC*, 558 U.S. 310 (2010); *SpeechNow.org v. FEC*,

599 F.3d 686 (D.C. Cir. 2010). They expressed concern that Commission precedent and regulations provided inadequate guidance regarding how § 30122 would be applied to closely held corporations and corporate LLCs. In light of this uncertainty, they said, pursuing enforcement in these cases would be "manifestly unfair," Statement of Reasons at 8 (J.A. 154), and in tension with "principles of due process, fair notice, and First Amendment clarity," *id.* at 2 (J.A. 148). When evaluating future straw donor allegations in similar factual contexts, the controlling commissioners planned to focus on "whether funds were intentionally funneled through a closely held corporation or corporate LLC for the purpose of making a contribution that evades the Act's reporting requirements." *Id.* at 12 (J.A. 158).

The controlling commissioners also briefly discussed the political committee allegations. They explained that the General Counsel did not recommend finding reason to believe with respect to those allegations and, in any event, the complaints were best analyzed under the straw donor provision rather than the political committee provisions.

The plaintiffs filed suit against the Commission, challenging the dismissals of their administrative complaints as contrary to law. *See* 52 U.S.C. § 30109(a)(8)(A), (C). The district court dismissed two of the matters for lack of standing. *Campaign Legal Ctr. v. FEC*, 245 F. Supp. 3d 119, 125-26 (D.D.C. 2017). As to the remaining three, the district court granted summary judgment for the Commission, holding that the dismissals were not contrary to law. *Campaign Legal Ctr.*, 312 F. Supp. 3d at 166.

The plaintiffs appeal the district court's grant of summary judgment. Our review is de novo. *FEC v. Craig for U.S. Senate*, 816 F.3d 829, 834 (D.C. Cir. 2016).

II

We begin with the question of standing. The plaintiffs are both nonprofit, nonpartisan organizations dedicated to supporting and enforcing campaign finance laws. To further its mission, Campaign Legal Center participates in "public education, litigation, regulatory practice, and legislative policy." Ryan Decl. at 2. Similarly, Democracy 21 "conducts public education efforts, participates in litigation," and undertakes "advocacy efforts." Wertheimer Decl. at 1. Neither organization engages in partisan political activity.

Plaintiffs rely on the doctrine of informational standing to "satisfy the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1042 (D.C. Cir. 2010) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The Commission contends that plaintiffs do not allege a cognizable injury-in-fact because they are not deprived of information that will be used "for personal voting or political participation." FEC Br. 21. In the Commission's view, "[n]onprofits that cannot vote, have no members who vote," and do not "engage in partisan political activity do not suffer a particular injury" when deprived of access to campaign finance disclosures. *Id.*

We disagree. "The law is settled that a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *Envtl. Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir. 2019) (internal quotation marks omitted); *see FEC v. Akins*, 524 U.S. 11, 21 (1998). The plaintiffs allege violations of FECA provisions that require accurate disclosure of contributor information, 52 U.S.C.

§ 30122, and the filing of public reports by political committees, *id.* §§ 30102, 30103, 30104. There is "no reason to doubt" that the disclosures they seek would further their efforts to defend and implement campaign finance reform. *See Friends of Animals v. Jewell*, 824 F.3d 1033, 1041 (D.C. Cir. 2016) (quoting *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002)); *see generally* Ryan Decl.; Wertheimer Decl. Finally, the plaintiffs' injury is "fairly traceable" to the Commission's dismissals of the complaints, and it is likely that the injury will be "redressed by a favorable decision" of this court. *Lujan*, 504 U.S. at 560-61 (internal quotation marks and alterations omitted).

Accordingly, plaintiffs have Article III standing to challenge the Commission's dismissals of their complaints.

III

The Commission urges affirmance of the district court's grant of summary judgment on two grounds. First, it relies on this court's recent opinion in *Citizens for Responsibility and Ethics in Washington v. FEC* (*CREW*), 892 F.3d 434 (D.C. Cir. 2018). *CREW* held that the Commission's dismissal of an administrative complaint in the exercise of its prosecutorial discretion was not judicially reviewable, *id.* at 439 (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)), and the Commission argues that the dismissals at issue here are also unreviewable exercises of prosecutorial discretion. Second, and in the alternative, the Commission argues that the dismissals were not contrary to law. *See* 52 U.S.C. § 30109(a)(8)(C).

The Commission's reviewability argument is complicated. *See* Concurring Opinion of Senior Judge Edwards. The Commission's alternative argument is not. And because reviewability is not a jurisdictional issue, we will proceed

directly to that alternative.  *See PETA v. Dep't of Agric.*, 797 F.3d 1087, 1097-98 (D.C. Cir. 2015).

As noted above, this court reviews the Commission's dismissal of an administrative complaint under the "contrary to law" standard.  52 U.S.C. § 30109(a)(8)(C).  The Commission's decision is contrary to law "if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986) (citations omitted).  In this deferential inquiry, we ask only whether the Commission's decision was "sufficiently reasonable to be accepted." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39 (1981) (internal quotation marks omitted).

A

We conclude that the Commission (through the statement of the controlling commissioners) provided a sufficiently reasonable basis for its decision not to investigate plaintiffs' straw donor allegations.

The controlling commissioners did not dispute that § 30122 applies to closely held corporations and corporate LLCs.  *See* Statement of Reasons at 12 (J.A. 158).  We agree that it does.  The controlling commissioners' reasoning for nonetheless dismissing the complaints was, in the plaintiffs' own words, "largely premised on the contention that the administrative complaints presented 'an issue of first impression' in light of the *Citizens United* and *SpeechNow* rulings and the 'new' corporate contributions those rulings authorized."  Pls. Br. 42 (quoting Statement of Reasons at 1-2 (J.A. 147-48)).

The commissioners explained that "past Commission decisions regarding funds deposited into corporate accounts may be confusing in light of [those] recent legal developments." Statement of Reasons at 2 (J.A. 148). In their view, "Commission precedent treat[ed] funds deposited in a corporate account as the corporation's funds, even if the corporation's owner could legally convert them into his or her own personal funds. Consequently, when such funds have been contributed to a political committee, the Commission has concluded that the corporation -- and not the individual(s) owning the corporation -- made the contribution." *Id.* at 9 (J.A. 155); *see, e.g.*, First General Counsel's Report at 33-34 (Oct. 18, 1996), MUR 4313.

The commissioners thought that Commission regulations may also have confused regulated parties. The only regulations specifically governing LLCs require partnership LLCs and single-member corporate LLCs to attribute their contributions to their individual members. *See* 11 C.F.R. § 110.1(g)(2), (4); *id.* § 110.1(e). But they provide no such instruction to other corporate LLCs.

On this basis, it was reasonable for the controlling commissioners to conclude that the respondents "were not provided adequate notice that their conduct could potentially violate" the straw donor provision. Statement of Reasons at 11 (J.A. 157).

The plaintiffs argue that the Commission's existing regulations and precedents are distinguishable from the straw donor violations alleged here. But we "must give deference to an agency's interpretation of its own precedents." *Pac. Coast Supply, LLC v. NLRB*, 801 F.3d 321, 333 (D.C. Cir. 2015) (internal quotation marks and alterations omitted). Moreover, it is undisputed that there are no Commission precedents that have applied the straw donor provision (or distinguished the

cited regulations and earlier precedents) to contributions made by corporate entities in the post-*Citizens United* era. And as this court has said: "In the absence of prior [direct] Commission precedent[,] . . . judicial deference to the agency's initial decision or indecision [is] at its zenith." *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1135 n.5 (D.C. Cir. 1987). According that deference here, we conclude that the decision to dismiss the straw donor allegations was not arbitrary or capricious.[2]

B

The Commission also provided a reasonable basis for its decision not to investigate plaintiffs' political committee allegations. *See* 52 U.S.C. §§ 30102, 30103, 30104. The Commission's General Counsel concluded that, "[b]y definition, . . . an entity can be a conduit or a political committee, but not both" and determined that "[t]he record here provides reason to believe that [the corporate entities] acted as conduits [in violation of § 30122] . . . not . . . [as] political committees." First General Counsel's Report at 14 (June 6, 2012), MURs 6487-88 (J.A. 120). The controlling commissioners agreed that § 30122 was the applicable provision for the plaintiffs' allegations, although they declined to open an investigation under § 30122 for the reasons stated above. *See* Statement of

---

[2] The plaintiffs further maintain that the purpose-based standard the controlling commissioners said they would apply in evaluating future alleged § 30122 violations is unduly narrow. But we have no occasion to address that standard here because the controlling commissioners' "statement of reasons would not be binding legal precedent or authority for future cases." *Common Cause v. FEC*, 842 F.2d 436, 449 n.32 (D.C. Cir. 1988); *see id.* ("The statute clearly requires that for any *official* Commission decision there must be at least a 4-2 majority vote.").

Reasons at 6 n.36 (J.A. 152). Indeed, the plaintiffs also agree that an entity can be a conduit under § 30122 or a political committee under §§ 30102-04, but not both. Recording of Oral Arg. at 2:35.

Because the controlling commissioners' reliance on the General Counsel's recommendation and analysis of the relevant statutory provisions was "sufficiently reasonable to be accepted," we will not disturb their decision. *Democratic Senatorial Campaign Comm.*, 454 U.S. at 39 (internal quotation marks omitted).

IV

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*

EDWARDS, *Senior Circuit Judge*, concurring: I agree that we should affirm the judgment of the District Court for the reasons set forth in the opinion for the court. I write separately, however, to express my concerns over the position taken by the Federal Election Commission ("FEC" or "Commission") suggesting that the matter before this court is not subject to judicial review. The FEC argues that, because the Statement of Reasons given by the three "controlling" Commissioners who voted to dismiss Appellants' complaints said that the dismissal was an exercise of "prosecutorial discretion," Appellants' challenge is entirely beyond judicial scrutiny. The Commission is wrong.

The Commission's position flies in the face of the terms and purpose of the Federal Election Campaign Act ("FECA"). It is also flatly at odds with the Supreme Court's decision in *FEC v. Akins*, 524 U.S. 11 (1998). And it ignores this court's decisions in *Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995), *Democratic Congressional Campaign Committee v. FEC* (*DCCC*), 831 F.2d 1131 (D.C. Cir. 1987), and *Orloski v. FEC*, 795 F.2d 156 (D.C. Cir. 1986).

\* \* \* \* \*

In advancing the claim that Appellants' complaints are not subject to judicial review, the FEC relies on *Citizens for Responsibility & Ethics in Washington v. FEC* (*CREW*), 892 F.3d 434 (D.C. Cir. 2018). The majority decision in *CREW* states that the FEC's refusal to institute enforcement proceedings in that case was not subject to judicial review because the Commission purported to act pursuant to prosecutorial discretion. In reaching this result, the majority in *CREW* determined that the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821 (1985), was *controlling*. 892 F.3d at 439. It is clear, however, that *Heckler v. Chaney* does not control the disposition of this case.

"From the beginning," the Supreme Court has recognized that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). The "generous review provisions" of the APA, which provide a cause of action "not only for review of 'agency action made reviewable by statute' but also for review of 'final agency action for which there is no other adequate remedy in a court,'" "embod[y this] basic presumption." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41 (1967) (quoting 5 U.S.C. § 704), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979) (noting that the presumption of reviewability is "codified" in APA Section 702). And, "[b]ecause the presumption favoring interpretations of statutes to allow judicial review of administrative action is well-settled," Congress is assumed to "legislate[] with knowledge of [it]." *Kucana v. Holder*, 558 U.S. 233, 251–52 (2010). Consequently, whether a party challenging agency action claims jurisdiction and a cause of action based on (1) provisions in an agency's authorizing or enabling statute, (2) 28 U.S.C. § 1331 and the APA, (3) 28 U.S.C. § 1331 and an implied cause of action derived from the Constitution, or (4) some combination of these and other special federal question jurisdictional statutes, a reviewing court begins with the "strong presumption" that Congress intends judicial review.

EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 188-89 (3d ed. 2018) (alterations in original).

3

The Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821 (1985), enforces a bar against judicial review of agency action "committed to agency discretion by law," as codified in § 701(a)(2) of the APA. This bar reflects a "very narrow exception" to the presumption of reviewability. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). And the exception applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id*. In other words, "even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Webster v. Doe*, 486 U.S. 592, 599-600 (1988) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

A variation of the no-law-to-apply test controls when an agency decides not to undertake an individual enforcement action. In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court reasoned that an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities" regarding enforcement actions. *Id*. at 831–32. Looking to the common-law tradition predating the APA, the Court concluded that an agency's decision not to take an enforcement action should be presumed to be immune from judicial review. It emphasized, however, that such a "decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id*. at 832–33.

EDWARDS & ELLIOTT, *supra*, at 195.

What is noteworthy here is that the Supreme Court has made it clear that the commands of *Heckler v. Chaney*, regarding the reviewability of agency enforcement actions, do not apply to matters in which a complainant seeks review of Commission actions under the Federal Election Campaign Act. In *FEC v. Akins*, 524 U.S. 11 (1998), the FEC determined that the American Israel Public Affairs Committee was not a "political committee" that was required to make disclosures regarding its membership, contributions, and expenditures as would otherwise be required by the FECA. The Supreme Court held that a group of voters had standing to challenge the Commission's decision and remanded the case for further proceedings before the FEC. Critically, the Supreme Court flatly rejected the Commission's claim that the voters' challenge should be dismissed as unreviewable pursuant to *Heckler v. Chaney*.

The decision in *Akins* first noted that

> Congress has specifically provided in FECA that "[a]ny person who believes a violation of this Act . . . has occurred, may file a complaint with the Commission." § 437g(a)(1). It has added that "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . may file a petition" in district court seeking review of that dismissal. § 437g(a)(8)(A). History associates the word "aggrieved" with a congressional intent to cast the standing net broadly— beyond the common-law interests and substantive statutory rights upon which "prudential" standing traditionally rested.

524 U.S. at 19 (alterations in original). The Court in *Akins* then went on to make it clear that the FECA is *explicit* in indicating that Congress meant to alter the traditional view that agency

enforcement decisions are not subject to judicial review. On this point, *Akins* says:

> [T]he FEC argues that we should deny respondents standing because this case involves an agency's decision not to undertake an enforcement action—an area generally not subject to judicial review. In *Heckler*, this Court noted that agency enforcement decisions "ha[ve] traditionally been 'committed to agency discretion,'" and concluded that Congress did not intend to alter that tradition in enacting the APA. 470 U.S., at 832, cf. 5 U.S.C. § 701(a) (courts will not review agency actions where "statutes preclude judicial review," or where the "agency action is committed to agency discretion by law"). *We deal here with a statute [, the FECA,] that explicitly indicates the contrary.*
>
> In sum, respondents, as voters, have satisfied both prudential and constitutional standing requirements. *They may bring this petition for a declaration that the FEC's dismissal of their complaint was unlawful.* See 2 U.S.C. § 437g(a)(8)(A).

524 U.S. at 26 (second alteration in original) (emphasis added) (citation omitted).

The Supreme Court's decision in *Akins* could not be clearer in saying that the presumption of nonreviewability under *Heckler v. Chaney* has no application in actions arising under the FECA. The decision in *CREW* appears to suggest that *Akins* is distinguishable, *see CREW,* 892 F.3d at 438 n.6, 441 n.11, but, respectfully, this suggestion is not sustainable. *Akins* does not say that a complaint is not subject to judicial review when the Commission purports to invoke prosecutorial discretion in dismissing the complaint. Just as we see in this case, a

Commission decision may *survive review*. However, *Akins* does not say that disputes of the sort at issue in this case *escape review* merely because three FEC Commissioners purported to act pursuant to prosecutorial discretion. Indeed, as noted above, the Supreme Court in *Akins* plainly rejected the FEC's argument that challenges arising under the FECA should be subject to *Heckler v. Chaney*. Again, the critical language in *Akins* is this:

> In *Heckler*, this Court noted that agency enforcement decisions "ha[ve] traditionally been 'committed to agency discretion,'" and concluded that Congress did not intend to alter that tradition in enacting the APA. 470 U.S., at 832, cf. 5 U.S.C. § 701(a) (courts will not review agency actions where "statutes preclude judicial review," or where the "agency action is committed to agency discretion by law"). *We deal here with a statute [, the FECA,] that explicitly indicates the contrary.*

524 U.S. at 26 (first alteration in original) (emphasis added). *CREW* does not address this.

It is also noteworthy that, in its brief to this court in *CREW*, the Commission acknowledged that when FEC Commissioners purport to invoke prosecutorial discretion in dismissing a complaint, the matter in dispute *is* subject to judicial review. As the FEC explained:

> Recognizing the permissibility of prosecutorial discretion does not invalidate any portion of [the FECA's] statutory scheme. That is because *Commission decisions not to prosecute, unlike those of most agencies, remain subject to judicial review. Akins*, 524 U.S. at 26; *see Heckler*, 470 U.S. at 832. When the Commission dismisses an administrative complaint,

even as an exercise of prosecutorial discretion, it must explain its rationale for doing so. *See Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1135 (D.C. Cir. 1987). On judicial review of that decision, courts evaluate the Commission's exercise of discretion to determine whether it depends on any errors of law or is otherwise unreasonable. *Orloski*, 795 F.2d at 161; *see also* [*Citizens for Responsibility & Ethics in Washington v. FEC*, 475 F.3d 337, 340 (D.C. Cir. 2007)] ("At this stage, judicial review of the Commission's refusal to act on complaints is limited to correcting errors of law.").

If the Commission supplies reasonable grounds for invoking its discretion not to pursue a matter, its decision is not contrary to law and the condition precedent for a private right of action is never triggered. *See* 52 U.S.C. § 30109(a)(8)(C). *In the event the Commission's rationale for not pursuing a case is unreasonable — or if the Commission makes errors of law in its analysis — that exercise of discretion would be rejected on judicial review and the matter would be remanded to the agency. Id.* If the Commission failed to conform to such a court declaration, a complainant could bring a civil action in its own name. *Id.*

Br. for FEC at 27-28, *CREW*, 892 F.3d 434 (D.C. Cir. 2018) (No. 17-5049) (emphasis added).

In its brief to the court in this case, the Commission's argument reflects a complete change of position. Contrary to its position in *CREW*, the Commission now argues that because the decision issued by three Commissioners was based on prosecutorial discretion, it is not subject to judicial review. Br. for FEC at 17. The Commission also argues here that *Heckler*

*v. Chaney* applies, *id.* at 24, 26-28, even though the FEC conceded in *CREW* that a Commission decision not to prosecute is reviewable pursuant to the Supreme Court's decision in *Akins* and that *Heckler* does not bar review.

The Commission now ignores *Akins* and abandons (without explanation) the position that it presented to the court in *CREW*. In other words, the Commission seeks to parlay the judgment rendered in *CREW* to achieve a result that it eschewed in *CREW*. This may be nothing more than an example of a party acting in its own self-interest. I would have thought, however, that a government agency such as the FEC, with important responsibilities in enforcing the FECA, would at least explain to the court how its position on reviewability can change so dramatically.

What is particularly troubling in this case is that the Commission's position in *CREW* was perfectly consistent with the well-established law of the circuit. The Commission was correct in arguing to the court in *CREW* that "the permissibility of prosecutorial discretion does not invalidate [the requirements of the FECA]. That is because Commission decisions not to prosecute, unlike those of most agencies, remain subject to judicial review." Br. for FEC at 27, *CREW*, 892 F.3d 434 (D.C. Cir. 2018) (No. 17-5049). If *CREW* can be read to suggest that "when three Commissioners invoke 'prosecutorial discretion' they foreclose both the FEC enforcement action and our review of the decision not to proceed, [this] certainly seems contrary to Congress's intent." *Citizens for Responsibility & Ethics in Washington v. FEC*, 923 F.3d 1141, 1142-43 (D.C. Cir. 2019) (Griffith, J., concurring in the denial of rehearing en banc). It is also contrary to the law of the circuit.

As the Commission explained in its brief to the court in *CREW*, when the Commission dismisses an administrative complaint, even as an exercise of prosecutorial discretion, it must explain its rationale for doing so and the matter is subject to judicial review. *Heckler v. Chaney* does not bar judicial review. The law of the circuit is clear on these points, and the law was well-established long before the decision in *CREW*. *See Chamber of Commerce*, 69 F.3d 600; *DCCC*, 831 F.2d 1131; and *Orloski*, 795 F.2d 156. And, under the law of the circuit, it is well-understood that:

> The standard to be applied by this court in reviewing the FEC's decision not to investigate [a] complaint is whether the FEC has acted "contrary to law." *See* 2 U.S.C. § 437g(a)(8)(C). The FEC's decision is "contrary to law" if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act . . . or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion.

*Orloski*, 795 F.2d at 161.

In sum, there is no basis to credit *CREW*'s statement regarding the applicability of *Heckler v. Chaney* over the law of the circuit to the contrary. As we explained in *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011), "when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being a violation of that fixed law, cannot prevail." *Id.* at 854. We are bound to follow the law of the circuit, which is plainly reflected in *Chamber of Commerce*, *DCCC*, and *Orloski*. It is also accurately explained by the Commission in its brief to the court in *CREW*. The Commission's position on the reviewability of Appellants'

claim in this case is misguided because it cannot be squared with the law of the circuit. This court is not barred from reviewing Appellants' claim under *Heckler v. Chaney*. On the merits, however, I concur in the judgment of the court.